IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BEATRIZ I. MALLORY, | : |
| | : |
| Plaintiff, | : |
| v. | : 3:19-CV-744 |
| | : (JUDGE MARIANI) |
| WELLS FARGO BANK, N.A., | : |
| | : |
| Defendant. | : |

### MEMORANDUM OPINION

Plaintiff Beatriz Mallory commenced this action against Defendant Wells Fargo Bank, N.A. on July 6, 2017 in the Court of Common Pleas of Wayne County, Pennsylvania by writ of summons, which Defendant removed to this Court on May 1, 2019.[1] (Doc. 1). In the Complaint, Plaintiff alleges the following: (1) violation of the Unfair Trade Practice and Consumer Protection Law, 73 P.S. § 201.2; (2) violation of the Truth-In Lending Act, 15 U.S.C. § 1601; (3) breach of contract; (4) libel/slander; and (5) wrongful use of civil proceedings and abuse of process. (Id).

On December 3, 2020, Defendant filed a letter advising the Court of a discovery dispute that had arisen between the parties. (Doc. 61). The letter explained that on November 20, 2020, Plaintiff served four deposition notices on Defendant which sought to

---

[1] On June 27, 2019, Plaintiff also filed a "Petition for Contempt to Compel Enforcement of Stipulation" in the Court of Common Pleas of Wayne County, Pennsylvania, which Defendant removed to this Court on July 18, 2019 (No. 3:19-cv-01235, "Second Federal Action"). On March 24, 2020, the Court granted Defendant's Motion to Consolidate the above-captioned matter with the Second Federal Action. (Doc. 39).

depose Wells Fargo's current Chief Executive Officer ("CEO"), Charles Scharf, as well as three former CEOs, John Stumpf, Tim Sloan and C. Allen Parker. (*Id.* at 1). The letter further advised the Court that Defendant's counsel sent correspondence to Plaintiff on November 25, 2020 objecting to the deposition notices, and further spoke with counsel for Plaintiff on December 2, 2020, but the parties were unable to resolve this dispute. (*Id*). The December 3 letter requested that the Court schedule a conference to address the dispute, or, alternatively, permit Defendant to file a motion to quash and for a protective order. (Doc. 61).

On December 8, 2020, Plaintiff filed a letter responding to Defendant's December 3 letter. (Doc. 63). Plaintiff requested that the Court not schedule a conference in regard to this discovery dispute, and further expressed Plaintiff's continuing need to take the four depositions of Defendant's current and former CEOs. (*Id*). The Court then issued an Order directing Defendant to file a motion to quash and for a protective order within seven days of the date of the Order. (Doc. 64).

On January 11, 2021, Defendant filed a "Motion to Quash and for a Protective Order." (Doc. 65). On January 25, 2021, Plaintiff filed a "Answer to Motion to Quash and for a Protective Order," wherein Plaintiff either admitted or denied each numbered factual point listed in Defendant's Motion. (Doc. 66).

Defendant argues that the four notices of deposition served by Plaintiff should be quashed for two reasons: 1) the correct mechanism to seek the testimony of former

employees is by subpoena pursuant to Fed. R. Civ. P. 45; and 2) the Notices violate the 'apex doctrine' and are intended to burden and harass Wells Fargo.  (*See* Defendant's Memorandum of Law in Support of Defendant's Motion to Quash and for a Protective Order, Doc. 65-1 at 6–12).

    Federal Rule of Civil Procedure 26(b) states, in pertinent part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

    Courts in this Circuit have applied the "apex doctrine" when considering whether depositions of high-level corporate executives are appropriate in litigation.  The apex doctrine "relates to the Rule 26 mandate for courts to limit discovery that is 'unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.'" *In re Tylenol (Acetaminophen) Marketing, Sales Practices and Products Liability Litigation*, No. 14-mc-00072, 2014 WL 3035791, at *2 (E.D. Pa. July 1, 2014) (quoting Fed. R. Civ. P. 26 (b)(2)(C)).  This doctrine reflects the idea that "'depositions of high level corporate executives may be duplicative, cumulative and burdensome where the person sought to be deposed has no personal

knowledge of the events in disputes." *Id.* (quoting *Harris v. Computer Assocs. Int'l., Inc.*, 204 F.R.D. 44, 46 (E.D.N.Y. 2001)).

When determining whether the deposition of a high-ranking corporate officer or executive is appropriate, courts will consider "1) whether the executive has personal, superior, or unique knowledge on the relevant subject; and 2) whether the information can be obtained in a less burdensome way, such as through lower-level employees or other discovery methods." *Id.* at *3.

As to the first prong of the apex doctrine, Plaintiff has failed to provide any facts to support a finding that Defendant's current and former CEOs have personal, superior or unique knowledge of Defendant's prior dealings with Plaintiff that are the subject of this litigation. In opposition to Defendant's Motion to Quash, Plaintiff generally asserts that the current and former CEOs "have pertinent and actual knowledge of corporate policies and systemic practices," without explaining how those polices and systemic practices are relevant to the loans and foreclosure proceedings that are at issue. (Doc. 66 at ¶ 47). Further, the information Plaintiff seeks to learn from the current and former CEOs as to "relevant issues about the case" can likely be obtained through lower level corporate officers by way of notice of deposition pursuant to Federal Rule of Procedure 30(b)(6). (*Id.* at ¶ 13). However, the Court takes note of the statement of Defendant in its Memorandum of Law in Support of its Motion to Quash and for a Protective Order that "Plaintiff has not sought to depose a corporate representative of Wells Fargo through a standard R. 30(b)(6)

4

deposition."[2] (Doc. 65-1 at 9–10).  *See United States ex rel. Galmines v. Novartis Pharms. Corp.*, No. 06-3213, 2015 WL 4973626, at *3 (E.D. Pa. Aug. 20, 2015) (granting the defendant's former CEO's motion to quash, finding that "the burden or expense of the proposed discovery outweighs its likely benefit," and further that "Mr. Galmines has not articulated why the information sought (whatever, specifically, it may be) could not be obtained from lower level employees or through less burdensome means"); *see also George v. Pennsylvania Turnpike Comm'n.*, No. 1:18-cv-766, 2020 WL 2745724, at *3 (M.D. Pa. May 27, 2020) (denying the plaintiff's motion to compel the deposition of the defendant's current CEO, finding that, beyond being untimely, the motion fails under application of the apex doctrine because although the CEO had some knowledge of the decision to fire the plaintiff, "it cannot be said that [the CEO] possessed superior, or unique knowledge of these events").

For the reasons set forth above, the Court will grant Defendant's "Motion to Quash and for a Protective Order" (Doc. 65). A separate Order follows.

                                               Robert D. Mariani
                                               United States District Judge

---

[2] Defendant also argues that "the Notices issued to the former CEOs are all procedurally improper as these individuals are no longer employed by Wells Fargo and 'a corporation may not be examined through its former officers, directors, or managing agents, nor subordinate employees or stockholders.'" (Doc. 65-1 at 6–7 (quoting *Pettyjohn v. Goodyear Tire & Rubber Co.*, 1992 U.S. Dist. LEXIS 10098 at *3-4 (E.D. Pa. July 8, 1992)).  Defendant correctly notes that the proper course of action to depose such former CEOs would have been to subpoena them pursuant to Federal Rule of Civil Procedure 45.

5