THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BEATRIZ I. MALLORY, | : |
| Plaintiff | : 3:19-CV-744 |
| | : (JUDGE MARIANI) |
| v. | : (Magistrate Judge Carlson) |
| WELLS FARGO BANK, N.A., | : |
| Defendant. | : |

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court is Magistrate Judge Martin Carlson's Report and Recommendation ("R&R") (Doc. 124), which recommends that this Court grant in part and deny in part Defendant Wells Fargo Bank, N.A.'s Motion for Summary Judgment (Doc. 71). Specifically, the R&R recommends the entry of summary judgment in favor of Defendant on all of Plaintiff's claims except breach of contract. (*See* Doc. 124.) Plaintiff Beatriz Mallory filed objections to the R&R, as did Defendant. (*See* Docs. 125, 129.) Upon review, one of Plaintiff's objections has merit, and none of Defendant's. The R&R will therefore be adopted as modified.[1]

---

[1] The Court also considers all relevant briefs. Of note, Plaintiff filed a "Motion to Amend" (Doc. 132) her previously filed "Response to Defendant Wells Fargo['s] Partial Appeal of the Magistrate's Report and Recommendation" (Doc. 128), asking the Court to consider instead an amended version of that brief, which she attached to her Motion (Doc. 132-1). The Court accordingly considers Plaintiff's amended brief in response to Defendant's objections (Doc. 132-1).

1

## II. ANALYSIS

### A. Defendant's Objections

First, the Court addresses Defendant's objections to Judge Carlson's recommendation that its Motion be denied with respect to Plaintiff's breach of contract claim. Defendant objects on three grounds. First, Defendant argues that the Stipulation (Doc. 71-6, Ex. 4, hereinafter "Stip.")[2] is not an enforceable contract because "there was no meeting of the minds." (Doc. 125 at 2.) Second, Defendant argues that even if it is enforceable, Defendant complied with its obligations by providing Plaintiff with loan modification offers on January 8 and 15, 2016. (*Id.*; Doc. 125-1 at 11.) Third, Defendant argues Plaintiff failed to establish that she suffered damages caused by Defendant, and therefore Plaintiff's claim should fail. (Doc. 125 at 3.)

#### 1. The Stipulation Is Enforceable

Defendant first objects to the R&R's conclusion that "a valid, enforceable agreement existed between the parties." (Doc. 124 at 13.) Defendant contends this determination "ignores the fact that Plaintiff was never going to accept a loan modification because she believed that the Stipulation entitled her to 'new mortgages,' not modifications of the prior mortgages." (Doc. 125-1 at 8.) In other words, because Defendant understood the Stipulation to provide for loan modifications and Plaintiff understood it to provide for new

---

[2] The Stipulation, as discussed in the R&R, refers to an August 2, 2011 Order by the Court of Common Pleas of Wayne County. In that Order, the parties entered a stipulated settlement agreement orally on the record, and it was approved by the court. (*See* Doc. 71-6 at 9.)

mortgages, Defendant contends the parties did not "mutually assent to the same thing." (*Id.* at 10 (quoting *United Incentives, Inc. v. Sea Gull Lighting Products, Inc.*, Case No. 91-0226, 1992 U.S. Dist. LEXIS 2494, *10 (E.D. Pa. March 2, 1992)).)

At the outset, insofar as Defendant contends that the Stipulation is ambiguous to the point of unenforceable because the parties disagree as to whether the Stipulation provides for new mortgages or loan modifications, that argument is misguided. A contract is not rendered ambiguous merely because the parties dispute its proper construction. *Teffeteller v. Teffeteller*, 258 A.3d 508 (Pa. Super. Ct. 2021) (quoting *Metzger v. Clifford Realty Corp.*, 476 A.2d 1, 5 (Pa. Super. 1984)), *rearg. denied,* (Aug. 16, 2021). Still, looking solely at the Stipulation itself, the Stipulation repeatedly refers to both "new mortgages" and "loan modifications" in referencing Defendant's obligations. (*See* Stip. at 4, 5.) "New mortgages" are referenced more frequently, but procedures for "modifying the loans" are also referenced throughout. (*Id.* at 4.)

Despite the use of both terms, the Stipulation is not unenforceable. Settlement agreements, even where judicially approved, "are construed according to traditional precepts of contract construction." *Sang Koo Park v. Evanston Ins. Co.*, No. CV 19-4384, 2021 WL 5399908, at *3 (E.D. Pa. Nov. 18, 2021), *aff'd sub nom. Park v. Evanston Ins. Co.*, No. 21-3161, 2023 WL 2890165 (3d Cir. Apr. 11, 2023) (quoting *In re Columbia Gas Sys. Inc.*, 50 F.3d 233, 238 (3d Cir. 1995)) (applying Pennsylvania law). Courts will enforce the terms of settlement agreements when they contain the requisites for a valid contract. *See*

*id.* (first citing *Williams v. Metzler*, 132 F.3d 937, 946 (3d Cir. 1997); and then citing *McDonnell v. Ford Motor*, 643 A.2d 1102, 1105 (Pa. Super. 1994)). On the other hand, settlement agreements are not enforceable "if the terms are 'ambiguous or poorly defined' such that it is 'impossible to understand' the parties' agreement." *Id.* (citing *Shell's Disposal & Recycling, Inc. v. City of Lancaster*, 504 F. App'x 194, 202 (3d Cir. 2012)).

There is, however, a middle ground. A settlement agreement, like any contract, can at the same time contain ambiguities and be enforceable. As the Third Circuit has explained, "any ambiguity that flows from the language . . . used to craft the terms of [an] agreement is more properly seen as a dispute over the interpretation of the contract, not the definiteness (and thus enforceability) of the contract." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 586 (3d Cir. 2009) (applying Pennsylvania law). In such a case, the ambiguity "is the more garden-variety type," and its presence goes to "who (the judge or jury) must decide what the given clause means." *Id.*

Here, Judge Carlson concluded that "the terms of this Stipulation" were not "so ambiguous as to render the agreement unenforceable," and this Court agrees. (Doc. 124 at 15.) The Stipulation makes clear that Defendant was obligated to deliver some version of a 30-year mortgage with no escrow, no fees, and a 3.75% interest rate, for both the 19D and 19B Hill Top Road properties. (Stip. ¶ 7.) It is an enforceable contract, and Defendant's objection on this ground is without merit.

However, this Court disagrees with the R&R's subsequent conclusion that Defendant's "obligation . . . to provide Mallory with loan modifications" is unambiguous. (*Id.*) Instead, because Defendant's precise obligation is reasonably susceptible to more than one construction, the Stipulation is ambiguous with respect to whether it required Defendant to deliver loan modifications or new mortgages.[3]

Under Pennsylvania law, "[w]hen interpreting a contract, a court must determine the intent of the parties and effect must be given to all provisions in the contract." *Krizovensky v. Krizovensky*, 624 A.2d 638, 642 (Pa. Super. Ct. 1993). "It is firmly settled that the intent of the parties to a written contract is contained in the writing itself."[4] *Id.* "While unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of fact." *Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004).

"To be 'unambiguous,' a contract clause must be reasonably capable of only one construction." *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997). On the other hand, "[a] contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense."

---

[3] This obligation is primarily laid out in paragraph seven of the Stipulation but is discussed and expounded upon throughout the document. The Court therefore avoids describing this ambiguity in terms of a specific paragraph within the Stipulation.

[4] In Pennsylvania, "oral stipulations made in open court[] [that] receive the imprimatur of the trial judge . . . have the same effect as though reduced to writing and executed with complete formality." *Zvonik v. Zvonik*, 435 A.2d 1236, 1243 (1981) (collecting authorities). The Court accordingly considers the Stipulation an agreement in writing.

*Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1986). When—and only when—a court determines as a matter of law that an ambiguity exists, "parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances." *Kripp*, 849 A.2d at 1163.

Here, it is readily apparent that the Stipulation contains ambiguities because it is internally inconsistent on its face. Both new mortgages and modified loans are referenced throughout, seemingly to refer to the same obligation. Paragraphs seven and eight are prime examples:

> 7. New mortgages: Wells Fargo will make an absolute commitment to write a *new 30 year, 3.75 escrow[-]free, fee-free mortgage* for 19D Hill Top Road and 19B Hill Top property. Wells Fargo will do everything in their power to get *modification*, and this is an avenue that Wells Fargo will absolutely venture. . . .
>
> 8. Procedure: Wells Fargo gives assurance that it will approach Fannie Mae and Freddie Mac about *modifying the loans* and *writing new mortgages* at the above terms. . . .

(Stip. ¶¶ 7, 8 (emphases added).) The use of the terms interchangeably, together with the fact that the Stipulation does not define any of its terms, creates an ambiguity with respect to which of the two Defendant was obligated to deliver. Inexplicably, the parties' submissions fail to explain the significance of the distinction between a new mortgage and a

loan modification. But accepting that Defendant's expected performance under the Stipulation depends upon which of the two was intended, this obligation is ambiguous.[5]

Further, Paragraph 3 of the Stipulation, referring to the payment of legal fees (the "Legal Fees Provision"), is ambiguous as to whether the payment was a continuing obligation or a one-time payment. The Legal Fees Provision reads, "Wells Fargo will pay all of Mallory's legal fees, which as of today's date is $10,301.00." (Stip. ¶ 3.) Viewing the agreement as a whole, there is reason to believe the obligation was intended to be continuing, because the process of effectuating the settlement agreement was ongoing. At the same time, the Stipulation states that "from this date forward" Defendant would "have authority to contact" Plaintiff directly, and correspondence "to facilitate the terms of this

---

[5] It is worth noting that the R&R's dismissal of Plaintiff's Truth in Lending Act ("TILA") claim is premised upon the fact that loan modifications do not trigger disclosure requirements under TILA. (Doc. 124 at 25.) It might seem to follow that the TILA claim should survive, given the ambiguities regarding whether a loan modification or new mortgage was required. Indeed, refinancing (*i.e.*, a new mortgage) *does* trigger disclosure requirements under TILA. But this ambiguity does not preclude summary judgment with respect to the TILA claim. As Defendant explains,

> [E]ven if disclosures were required for loan modifications, the disclosure obligations would not have been triggered by the draft loan modification because Plaintiff never accepted it. TILA requires that a creditor make the disclosures "before the credit is extended." 15 U.S.C. § 1638(b). Regulation Z provides that "[t]he creditor shall make disclosure before consummation of the transaction," and consummation is defined as "the time the consumer becomes contractually obligated on a credit transaction." 12 C.F.R. §§ 226.17(b), § 226.2(a)(13). Plaintiff rejected the draft loan modification so even if TILA applied to a loan modification (it does not), credit was never extended to trigger disclosure requirements.

(Doc. 72 at 22.) In other words, regardless of whether Defendant was obligated to provide a new mortgage or a loan modification, it is undisputed that what was actually offered to Plaintiff was a loan modification, and further, that Plaintiff rejected those offers. The Court therefore agrees that Defendant's Motion should be granted with respect to Plaintiff's TILA claim.

agreement" would not run through Plaintiff's counsel. (Stip. at 2.) This suggests that Plaintiff would not continue to incur attorney's fees related to this matter, at least not in connection with her then-current counsel.

The text of the Legal Fees Provision itself is easily read both ways.[6] It is reasonably susceptible to an understanding that the phrase "all of Mallory's legal fees" was qualified by the total that followed, and therefore required payment of all legal fees *incurred to date*. But it is also reasonably susceptible to an understanding that *all* legal fees would be paid, until some unstated endpoint, and the total that followed was simply the amount due as of that date.[7] Accordingly, the Court cannot agree with the R&R's conclusion that Plaintiff's claim for attorney's fees fails as a matter of law. (Doc. 124 at 17.)

Because the Stipulation is ambiguous in at least two respects, the Court may look to extrinsic evidence for clarity.[8] Unfortunately, the parties offer scant evidentiary support for their respective positions. They argue forcefully their respective *beliefs*, but do not provide the Court with evidence on which to determine that one of their interpretations is the one the

---

[6] The Court is unpersuaded by Defendant's conclusory argument that "Plaintiff's interpretation of the [Legal Fees Provision] is illogical and absurd," and further, "nonsensical." (Doc. 133 at 9–10.) The Court notes that Defendant argued in its brief in support of its Motion that "the terms regarding attorneys' fees are also ambiguous." (Doc. 72 at 10.)

[7] Plaintiff urges the Court to consider her expert report, which is a one-page letter filed by Kathleen Weiss, an English Professor. (Doc. 129 at 7; Doc. 115-7.) The Court declines to engage in a strict grammatical analysis given that the Stipulation is a relatively informal document that was orally entered into the record and presumably not drafted with great care for grammatical structure.

[8] Nothing in this Opinion should be read to suggest that the remaining provisions of the Stipulation are unambiguous. It is sufficient to determine that summary judgment is improper because the terms of the Stipulation raise at least two questions of fact.

parties originally intended. In a case such as this, where the terms of the contract are ambiguous and the extrinsic evidence is inconclusive, "deciding the intent of the parties becomes a question of fact for a jury." *Am. Eagle Outfitters*, 584 F.3d at 587 (first citing *Martin v. Monumental Life Ins. Co.*, 240 F.3d 223, 233 (3d Cir. 2001); and then citing *Community Coll. of Beaver County v. Community Coll. of Beaver*, 473 Pa. 576, 375 A.2d 1267, 1275 (1977)).

As such, the R&R correctly concludes that Plaintiff's breach of contract claim raises genuine disputes of material of fact that cannot be resolved on summary judgment. The Court's holding differs from the R&R only with respect to the identification of the ambiguities described above. Because several terms in the Stipulation are ambiguous, questions regarding the parties' obligations are properly decided by a jury.

It follows that Defendant's second argument, that it complied with the terms of the Stipulation and therefore did not breach, is premature. The Court cannot determine whether Defendant complied with its obligations when the Stipulation is ambiguous with respect to precisely what the obligations were. Those are questions for trial.

### 2. *Plaintiff's Claim Does Not Fail for Lack of Damages*

Defendant also argues that Plaintiff's claim must fail because she has not established that she suffered damages resulting from the alleged breach. But Defendant made the same argument in support of its Motion (*see* Doc. 72 at 12–13), and that argument was considered and rejected in the R&R. (*See* Doc. 124 at 21.) In its objections,

Defendant introduces no persuasive evidence or authority to convince the Court that Judge Carlson erred in rejecting this argument. Accordingly, because "[a] grant of summary judgment on the sole basis of absence of provable damages . . . is generally improper" under Pennsylvania law, this objection lacks merit. *Norfolk S. Ry. Co. v. Pittsburgh & W. Virginia R.R. & Power Reit*, No. 2:11-CV-1588-TFM, 2014 WL 2808907, at *19 (W.D. Pa. June 19, 2014) (quoting *Thorsen v. Iron and Glass Bank,* 328 Pa. Super. 135, 476 A.2d 928, 931 (Pa. Super. Ct. 1984)).

For the foregoing reasons, Defendant's objections will be overruled.

### B. *Plaintiff's Objections*

Plaintiff also objected to several of the R&R's conclusions. First, Plaintiff contends Judge Carlson erred in concluding that Defendant's obligation to pay Plaintiff's legal fees was not a continuing obligation. (*Id.* at 7.) This issue is addressed in the Court's discussion, *supra*, of the Stipulation's ambiguities. Accordingly, to the extent Plaintiff's objection argues that the Legal Fees Provision is ambiguous, that objection has merit. For the reasons noted above, however, Plaintiff is not entitled to construction of the Legal Fees Provision in her favor as a matter of law. Because the provision is reasonably susceptible to multiple constructions, its meaning will turn on questions of fact to be resolved by a jury.

Plaintiff's remaining two objections are plainly without merit. Plaintiff argues that Defendant's "stipulated admission of guilt is prima facie evidence of harm to plaintiff" such that Defendant is not entitled to summary judgment on her defamation claim. (Doc. 129 at

10

4.) Finally, Plaintiff argues that the gist of the action doctrine does not bar her Unfair Trade Practices and Consumer Protection Law ("UTPCPL") claim. (*Id.* at 10.) Neither argument is supported by persuasive facts or authority. These objections will therefore be overruled.

### III. CONCLUSION

The R&R (Doc. 124) will be adopted as modified for the reasons stated therein and above. Defendant's Motion for Summary Judgment (Doc. 71) will be granted with respect to all claims except Plaintiff's breach of contract claim. On the breach of contract claim, summary judgment will be denied. A separate Order follows.

Robert D. Mariani
United States District Judge